UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| MICHAEL BANASZYNSKI and ELIZABETH WOOD, Individually and on Behalf of All Others Similarly Situated, | Case No.: 19-cv-641 <br><br> **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | **Jury Trial Demanded** |
| MRS BPO, LLC and CHASE BANK USA, N.A., | |
| Defendants. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed the collection efforts into the District.

## PARTIES

3. Plaintiff Michael Banaszynski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Elizabeth Wood is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiffs a debt allegedly incurred for personal, family, or household purposes.

6. Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendants sought to collect from Plaintiffs was incurred as a result of a consumer transaction.

7. Defendant MRS BPO, LLC ("MRS") is a foreign limited liability company with its principal offices located at 1930 Olney Avenue, Cherry Hill, New Jersey 08003.

8. MRS does substantial business in Wisconsin and has a registered agent for service of process in Wisconsin located at Cogency Global Inc., c/o Dane County Title Company, Inc., 901 South Whitney Way, Madison, Wisconsin 53711.

9. MRS is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

10. MRS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

11. MRS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

12. MRS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

13. Defendant Chase Bank USA, N.A., (hereinafter "Chase") is a national banking association with its primary place of business located at 200 White Clay Center Drive, Newark, Delaware 19711.

14. Chase does substantial business in Wisconsin.

15. Chase issues and services "Amazon" and numerous other store-branded credit cards around the world, including in Wisconsin.

16. Chase is a debt collector under Wisconsin law.

2

17. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

18. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

19. Chase is a "debt collector" under Wisconsin law, in that it collects consumer debts owed to itself, both directly and indirectly through collection agencies.

20. Chase is a "merchant" as defined in the WCA, as the alleged debt arose from use of Plaintiff's consumer credit account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

21. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

22. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

3

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

23. Chase uses third-party debt collection agencies, including MRS, to collect consumer debts. Chase, directly or indirectly, is a "debt collector" under this arrangement. Wis. Stat. § 427.103(3).

24. A company meeting the definition of a "debt collector" (here, Chase) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf).

## FACTS

### *Facts Related to Plaintiff Banaszynski*

25. On or about June 16, 2018, Chase mailed an account statement to Plaintiff Banaszynski regarding an alleged debt associated with a credit card with an account number ending in 5462. A copy of this account statement is attached to this complaint as Exhibit A.

26. Upon information and belief, the alleged debt referenced by Exhibit A was incurred by use of a credit card, which was used exclusively for personal, family, and household purposes.

27. Upon information and belief, Exhibit A is a form account statement, generated by computer, and with the information specific to Plaintiff Banaszynski inserted by computer.

28. Exhibit A states:

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $8,555.92 |
| Payment Due Date | 07/13/18 |
| Minimum Payment Due | $2,278.00 |

4

29. Exhibit A states that, as of June 16, 2018, Plaintiff Banaszynski's account ending in 5462 had a "New Balance" of $8,555.92, with a "Payment Due Date" of July 13, 2018, and a "Minimum Payment Due" of $2,278.00.

30. On or about July 5, 2018, MRS mailed Plaintiff Banaszynski a debt collection letter regarding the same alleged debt owed to Chase associated with an account number ending in 5462. A copy of this letter is attached to this complaint as Exhibit B.

31. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Banaszynski inserted by computer.

32. Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by MRS to attempt to collect alleged debts.

33. Exhibit B was the first letter that MRS sent to Plaintiff Banaszynski with respect to Plaintiff's alleged debt.

34. Exhibit B contains the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send debtors along with their initial communications:

> **IMPORTANT CONSUMER INFORMATION**
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

35. Exhibit B also includes the following representation:

> CREDITOR: CHASE BANK USA N.A.
> CREDITOR ACCT#: xxxxxxxxxxxx5462
> MRS ACCT#: LU4▮▮▮6091
> ACCOUNT BALANCE: $8,555.92

36. Exhibit B, mailed on July 5, 2018, about two weeks after Chase mailed Exhibit A to Plaintiff, states the "ACCOUNT BALANCE" but does not state that Plaintiff Banaszynski could return his account to a current status by making a minimum payment.

5

37. Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

38. MRS's representation in Exhibit B that Plaintiff Banaszynski's account ending in 5462 had been accelerated is false, deceptive, misleading, and unconscionable.

39. According to Exhibit A, as of July 5, 2018, when MRS mailed Exhibit B, Plaintiff's account ending in 5462 had a "New Balance" of $8,555.92, with a "Payment Due Date" of July 13, 2018, and a "Minimum Payment Due" of $2,278.00.

40. The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit B. Exhibit B states that the "ACCOUNT BALANCE" is $8,555.92 without stating an amount "due," while Exhibit A seeks only a minimum payment of $2,278.00. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'").

41. MRS and Chase both represented the amount of the debt in a way that was confusing to the unsophisticated consumer and/or misrepresented the amount of the debt.

42. Upon information and belief, MRS and Chase work in a scripted process to collect Chase debts such as Plaintiff's.

43. Upon information and belief, MRS is fully aware of the contents and representations in Exhibit A,

44. Upon information and belief, MRS is fully aware that Chase sends Exhibit A to consumers just a few days before MRS mails a letter in the form of Exhibit B.

45. Upon information and belief, MRS is fully aware that its letter is sent during account billing cycles wherein Chase has sent a statement to consumers seeking a "minimum payment" and not representing that the entire balance is due.

46. Plaintiff Banaszynski was misled and confused by Exhibits A & B.

47. The unsophisticated consumer would be misled and confused by Exhibits A & B.

### *Facts Related to Plaintiff Wood*

48. On or around April 4, 2018, MRS mailed a debt collection letter to Plaintiff Wood regarding an alleged debt owed to Chase. A copy of this letter is attached to this complaint as Exhibit C.

49. Upon information and belief, the alleged debt that MRS was attempting to collect was a personal consumer loan account, used only for personal, family, or household purposes.

50. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff Wood inserted by computer.

51. Upon information and belief, Exhibit C is a form debt collection letter used by MRS to attempt to collect alleged debts.

52. Upon information and belief, Exhibit C is the first written communication MRS mailed to Plaintiff Wood regarding this alleged debt.

53. Exhibit C contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail to the alleged debtor along with, or within five days of, the initial communication"

**IMPORTANT CONSUMER INFORMATION**
Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

54. The thirty-day "validation period" described in Exhibit C begins when the consumer receives the validation notice. 15 U.S.C. § 1692g(a)(3) ("within 30 days after receiving this notice"); *see also Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) ("subparagraphs (3) and (4) of § 1692g(a) give the consumer thirty days **after receipt of the notice to dispute** . . . .") (emphasis added).

55. Upon information and belief, if Exhibit C were actually mailed on April 4, 2018, the letter would have been received on or about April 7, 2018.

56. If Exhibit C was received on April 7, 2018, the thirty-day validation period would have ended on May 7, 2018.

57. On or around May 2, 2018, MRS mailed another debt collection letter to Plaintiff Wood regarding the same alleged debt. A copy of this letter is attached to this complaint as Exhibit D.

58. Upon information and belief, Exhibit D is another form letter, generated by computer, and with the information specific to Plaintiff Wood inserted by computer.

59. Upon information and belief, Exhibit D is also a form debt collection letter used by MRS to attempt to collect alleged debts.

60. Exhibit D is dated May 2, 2018.

61. Upon information and belief, Exhibit D was actually sent to Plaintiff Wood on May 2, 2018, exactly 28 days after Exhibit C was sent to Plaintiff Wood.

62. Upon information and belief, Exhibit D was received less than thirty days after Exhibit C was received.

63. Because the validation period does not begin until the consumer receives the validation notice, the consumer still would have had time to trigger her validation rights when

8

Exhibit D was received. *Chauncey*, 118 F.3d at 519 (consumer that mails a written dispute on the thirtieth day triggers verification rights even if the debt collector receives the notice of dispute after the validation period has ended); *see also Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008) ("the recipient of a debt collection letter covered by the FDCPA validly invokes the right to have the debt verified whenever she *mails* a notice of dispute *within thirty days of receiving* a communication from the debt collector.").

64. One purpose of the thirty-day validation period is to allow the debtor time to consider all of her options and she is entitled to the full thirty days before mailing her notice of dispute. *Jacobson*, 516 F.3d at 95-96.

65. Exhibit D contains the following:

> We recognize that a possible hardship or pitfall may have prevented you from satisfying your obligation. We are presenting three options to resolve your balance. We are not obligated to renew this offer.

66. The unsophisticated consumer is not an FDCPA lawyer. Although she suspects that the plain language in the validation notice allows her to mail a written dispute on the thirtieth day, she does not know this definitively.

67. The unsophisticated consumer, receiving Exhibit D, would understand the statement that the debt is an "obligation" to mean that she no longer has time to dispute the debt.

68. The confusion as to the consumer's validation rights is compounded because Exhibit D is received during the validation period but more than thirty days after Exhibit C was dated and mailed, suggesting to the consumer that debt collectors need not provide verification of the debt if a written dispute is mailed during, but received after, the validation period.

69. Exhibit D falsely and misleadingly implies that the 30-day FDCPA validation period has already expired when MRS mailed Exhibit C. The validation period runs from the date that the consumer *receives* the letter, not when the debt collector mails it. Thus, the

9

validation period had not expired when MRS sent Exhibit D to Plaintiff Wood, nor had it expired when Plaintiff received Exhibit D.

70. Moreover, even if the consumer had *already* mailed a written dispute just a day or two prior to her receipt of Exhibit D, Exhibit D would mislead the unsophisticated consumer to believe that the debt collector need not provide verification because the validation period would have ended prior to the debt collector's mailing of the validation notice.

71. A district court in the Northern District of Illinois recently held that "[u]nder these circumstances, an unsophisticated consumer could reasonably have been confused about whether the payment options in . . . the second letter overshadowed her right (promised in the first letter) to dispute the debt during the full 30-day period." *Nieto v. MRS BPO LLC*, No. 17-cv-8507, 2018 U.S. Dist. LEXIS 66734 (N.D. Ill. Apr. 20, 2018); *see also Nieto v. MRS BPO LLC*, No. 17-cv-8507, 2018 U.S. Dist. LEXIS 192004 (N.D. Nov. 9, 2018) (granting summary judgment to defendant because plaintiff did not produce extrinsic evidence to prove confusion).

72. Plaintiff Wood was misled and confused by Exhibits C & D.

73. The unsophisticated consumer would be misled and confused by Exhibits C & D.

### ***The FDCPA***

74. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist.

10

LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

75. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

76. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

77. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

78. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

79. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

80. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

81. 15 U.S.C. § 1692g provides, in relevant part:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

12

…

> (b) **Disputed debts**
>
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### *The WCA*

82. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

83. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

84. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

85. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

86. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

87. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

88. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

89. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

90. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

91. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …." Wis. Admin.

14

Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

92. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

93. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I - FDCPA

94. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

95. Count I is brought on behalf of Plaintiff Banaszynski and against Defendant MRS.

96. By representing the balance of Plaintiff Banaszynski's alleged debt as having been accelerated, Exhibit B falsely represents the amount, character, and legal status of such debt.

97. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

98. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

99. Count II is brought on behalf of Plaintiff Banaszynski and against both Defendants.

100. By representing the balance of Plaintiff Banaszynski's alleged debt as having been accelerated, Exhibit B falsely represents the amount of such debt that is currently owed to the creditor and could be reasonably expected to threaten and harass Plaintiff.

101. Exhibit B thereby violates the FDCPA.

102. MRS is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

103. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III – FDCPA

104. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

105. Count III is brought on behalf of Plaintiff Wood and against Defendant MRS.

106. Exhibit D falsely represents the amount of time which intervened between the transmittal of that letter and Defendant's first letter to Plaintiff, Exhibit C.

107. Exhibit D falsely implies that the FDCPA validation period had expired when it had not.

108. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b).

## CLASS ALLEGATIONS

109. Plaintiffs bring this action on behalf of two prospective classes.

110. Class I consists of: (a) all natural persons in the State of Wisconsin (b) who were sent by MRS a collection letter in the form of Exhibit B to the complaint, (c) for an alleged debt owed to Chase and incurred for personal, family, or household purposes, (d) between May 2,

2018 and May 2, 2019, inclusive (e) that was not returned by the postal service. Plaintiff Banaszynski is the proposed class representative of Class I.

111. Class II consists of: (a) all natural persons in the State of Wisconsin (b) who were sent by MRS a collection letter in the form of Exhibit C to the complaint, (c) and who were sent a collection letter in the form represented by Exhibit D to the complaint less than 31 days after the letter in the form of Exhibit C was mailed, (d) seeking to collect a debt for personal, family, or household purposes, (e) between May 2, 2018 and May 2, 2019, inclusive, (f) that was not returned by the postal service. Plaintiff Wood is the proposed class representative of Class II.

112. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

113. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A-D violate the FDCPA or the WCA.

114. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

115. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

116. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

117. Plaintiffs hereby demand a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 2, 2019

                **ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com